16809

SANDERS *ET AL.* v. HOME FINANCE CO. OF SPARTANBURG, INC.

(79 S. E. (2d) 367)

*Messrs. James B. Stephen,* of Spartanburg, and *Mike S. Jolly,* of Union, *for Appellants,* cite:

*Messrs. Holcombe & Bomar,* of Spartanburg, *for Respondent,*

Stukes, Justice.

December 22, 1953.

This action was tried before the Judge of the Spartanburg County Court without jury or reference and resulted in judgment for the defendant, from which the plaintiffs have appealed.

The prayer of the amended complaint was, quoting, "that defendant be required to explain how $713.69 represents a fair and adequate price for the automobile; that the purported sale be set aside if practicable, or in the alternative, for an accounting for the difference between the fair value of the car and $713.69." It was admitted that it was impracticable to set the sale aside, whereby the contended cause of action became one solely for an accounting for the alleged surplus value of the automobile. The case, as tried, therefore turns upon an issue of fact, viz., the reasonable cash value of the car at the time of the foreclosure sale. Moreover, by pre-trial motions and order or orders, from which there was no appeal, the action was held by the trial court to be for an accounting for the alleged value of the automobile over and above the amount at which respondent bid it in at the foreclosure sale, which accords with the prayer of the amended complaint quoted *supra*. Recovery therefore depended upon proof of value of the car in excess of respondent's bid at the sale, for which appellants contend it is accountable to them. This was the theory upon which the case was tried, the soundness of which we need not examine because affirmance follows the facts, as will be seen.

Plaintiffs (who are husband and wife) purchased from James Auto Sales on June 19, 1951, the used 1946 two-door Chevrolet passenger automobile and, for the credit portion of the purchase price, executed an installment note and chattel mortgage in the amount of $1,040.00, payable $16.00 per week for 65 weeks. The note and chattel mort-

gage were thereafter sold and assigned without recourse by James to respondent.

Ten weekly payments were made by the appellants after which they defaulted and surrendered possession of the automobile to respondent. The mortgage provided that in such event the holder of it might, quoting from the terms of it, "at its option, sell said property with or without notice at private sale, or at public sale in any County the holder may elect, after having given five days notice at three public places at which said sale the holder may purchase, and the proceeds, less the expense of taking, removing, holding, repairing and selling the property and less attorney's fees and the expense of liquidating any liens or claims, shall be credited on the amount unpaid hereunder; and the surplus, if any, shall be paid to Purchaser."

Notice was publicly posted by respondent pursuant to the foregoing provision of the mortgage on October 16, 1951, of sale to the highest bidder for cash on October 22nd at James Auto Sales. The notice was proper in form and contained a full and accurate description of the automobile except that it was referred to as a 1947 model instead of 1946. There was a similar error in the model year in the chattel mortgage, which the notice followed. (We agree with the trial court that no prejudice to appellants thereby resulted; advertisement of a later model was better calculated to attract bidders than that of a model-year earlier.) One of the places where the notice was posted was the courthouse door, which conformed (whether necessary in this case we do not decide) to the provision thereabout of Sec. 8715 of the Code of 1942. Copy was also sent to the appellants by registered mail, which they received in advance of the date of sale.

There was no substantial contradiction of the testimony of the participants that the automobile was offered at public sale, at the place and approximate hour advertised, by an agent of respondent, who first read in a loud voice the notice

of sale; and was bid in for respondent by another agent for the sum of $713.69, which was the only bid. No one else attended the sale. The face amount of the indebtedness to respondent was considerably more and it arrived at the amount of the bid by allowing for refund of unearned insurance premium and rebate of interest or carrying charge, without addition of any foreclosure costs or expenses. The balance of the indebtedness of appellants to respondent was thereby paid, but there was no surplus.

Soon thereafter respondent sold the automobile to James at the exact amount which it had bid at the foreclosure sale. The latter, who was also a witness for respondent at the trial, testified that the car was, quoting, "pretty well abused." He "ran it through the shop", spent about $100.00 on replacements and repairs and thereafter sold it on credit for a stated consideration of $960.00, but in order to do that he accepted another old car in part payment, for which he allowed $320.00 and later sold it for $200.00 or $225.00. Thus he made a very small apparent gross profit. He estimated the value of the Chevrolet at about $700.00 when he bought it from respondent, which is substantiated by the purchase price of $713.69 which he paid and by his realization from the subsequent disposition of it. He said that he would have been willing to sell it after his repairs, etc., for $800.00, upon a reasonable cash down-payment and if not required to accept a trade-in.

Appellants did not attend the sale, of which they had actual notice by registered mail. Instead, one of them and the brother of the other rode in an automobile by the sales lot at about the time for the sale and the latter testified that he saw and heard nothing of the sale. He, who was the only witness for appellants (neither of whom testified) and was an automobile mechanic with limited experience in buying and selling used cars, estimated the value of the Chevrolet at "around $1,050.00" Through him there was introduced in evidence, over respondent's objection, the July 1, 1951, edition of the Red Book National Used Car

Market Report which contained prices of that model of Chevrolet of from $643.00 upward to $1,150.00. This "Red Book" was effective for the quarter ending Sept. 30, 1951. The testimony of James, briefed above, who was an experienced used car dealer, and his purchase and subsequent credit sale of the car compel the conclusion that there was no surplus value for which appellants may be made to account, granting (for the purpose of the decision) the law to be as argued by the appellants. We therefore deem it unnecessary to examine the propositions of law which have been advanced in argument by the appellants.

Upon the evidence, which has been sufficiently stated, the trial court concluded that the foreclosure and sale, of which due notice was given, were regular, whereby appellants' equity of redemption was extinguished; and that legal and equitable title to the automobile was vested in the respondent by its purchase at the sale; whereupon judgment was rendered for the latter. The court did not expressly pass upon the issue of the value of the automobile at the time of the foreclosure sale. However, respondent gave timely notice of additional grounds to sustain the judgment in this court and among them is the ground, in effect, that the automobile sold for its fair cash value so that there was no "equity" remaining.

The judgment must be affirmed upon the stated ground, namely, that the evidence established that the automobile was of no greater cash value than the amount of respondent's bid, for which appellants received full credit and their indebtedness to respondent was thereby paid. This is manifest upon the record irrespective of where the burden of proof lay.

Affirmed.

BAKER, C. J., TAYLOR and OXNER, JJ., and BRUCE LITTLEJOHN, A. A. J., concur.